DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RASHOUN SMITH | ) | |
| | ) | CASE NO. 5:09-CV-02099 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CITY OF AKRON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is Defendant City of Akron's ("the City") Motion for Summary Judgment. This is an action arising under 42 U.S.C. § 1983 initially filed in the Common Pleas Court of Summit County by Plaintiff Rashoun Smith ("Smith" or "Plaintiff"). The City removed the case to this Court on September 10, 2009.

For the reasons that follow, the City's motion for summary judgment is granted.

## I. Procedural Background

Smith filed a complaint in the Court of Common Pleas, Summit County, Ohio on August 27, 2009, which was the second anniversary of the events at issue in this case. The state court complaint named the City of Akron, the City of Akron Police Department, former Police Chief Michael Matulavich and John and Jane Doe Nos. 1-10 as defendants. The complaint alleged a constitutional violation for the use of excessive force during an arrest. The Court conducted a Case Management Conference on December 2, 2009, during which the Court granted leave for Smith to file an amended complaint. On December 3, 2009, Smith filed his First Amended

(5:09-CV-02099)

Complaint identifying John Doe Nos. 1 & 2 as Akron Police Officers John Ross ("Ross") and Michael Miles ("Miles"), respectively. Defendants Ross and Miles moved to dismiss Counts 1, 3, 4, 6, 8 and 9 against them on the grounds that these claims were barred by the statute of limitations. The Court granted Ross and Miles' requested relief and dismissed all claims against them as time-barred on June 29, 2010. The Court Ordered the case to proceed against all other Defendants.

However, because Smith alleges only two officers violated his constitutional rights (Officers Ross and Miles) and the Court has dismissed the claims against them as time-barred, an attempt to substitute named parties for the remaining John and Jane Doe Nos. 3-10 would be futile because the claims against the substituted named parties would be time-barred for the same reasons. Also, Smith testified during his deposition that only two officers allegedly violated his rights on the night at issue. Smith does not allege or provide evidence in his pleadings or by way of deposition testimony that other individuals violated his rights on the night at issue. This absence constitutes a failure to prosecute the John and Jane Doe Nos. 3-10 defendants and they are dismissed accordingly.

Additionally, the claims against former Police Chief Michael Matulavich are asserted against him only as the Chief of the City of Akron Police Department. A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 68 (1989). Lastly, since the Akron Police Department is not an entity which may be sued, the City of Akron is the only remaining proper party to address the allegations of Smith's Complaint. *See Tysinger v. Police Dept. of City of*

(5:09-CV-02099)

*Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006). Therefore, the City of Akron is the only remaining defendant in this case.

The City moved for summary judgment on all remaining counts against it. Smith filed his opposition and the City has replied in support of its motion. Therefore, the City's motion for summary judgment is ready for review.

## II. Factual Background

While on patrol on the night of August 27, 2007, two Akron Police Officers, Ross and Miles, began to follow Smith who was driving alone in his car. Before the officers signaled Smith to pull over, he voluntarily pulled into a driveway to determine why the officers were following him. These are essentially the only undisputed facts about what happened immediately prior to the altercation that occurred on the night of August 27, 2007. Genuine issues of fact exist concerning the events that triggered the ensuing altercation.

According to Smith, he exited his vehicle and upon command by one of the officers, he walked to the front of the police cruiser. During his deposition, Smith testified that he placed his hands on the hood of the cruiser upon an officer's command (and never removed them), told the officers his name when asked, turned his head to ask what was going on and in response one of the officers pushed his head down, and then, for unknown reasons, one of the officers took Smith to the ground, all before he was ever told he was under arrest.

According to Officers Ross and Miles, just as Smith pulled into the driveway they received information on their mobile computer that the license plates on Smith's car had been reported stolen. Smith then exited his vehicle and began to slowly walk diagonally across the

(5:09-CV-02099)

yard away from the cruiser.  Ross summoned Smith to the cruiser where Ross asked him about the ownership of the vehicle and Smith responded that it belonged to a friend but would not give the name.  Ross told Smith to place his hands on the cruiser, which he did, and then advised Smith that the license plates were reported stolen and that he was under arrest.  The officers attempted to handcuff Smith, but he refused to cooperate.  According to the officers, Smith then took his hands off of the cruiser, turned his whole body towards Officer Miles to challenge the arrest whereupon Officer Ross grabbed Smith around the chin and mouth area with his arm and took Smith to the ground.

The relevant facts of the subsequent struggle are not in dispute.  While on the ground, Smith was beaten, pepper sprayed and tasered by Ross and Miles who eventually handcuffed him and took him to Summit County Jail.  Smith was then taken to the Akron General Medical Center for observation, where he spent the night.  The following day, Smith was brought back to the Summit County Jail and then returned to the hospital where he spent a second night under observation.  The next morning, he was released on signature bond.  He was charged with driving under a suspended license, resisting arrest and receiving stolen property.  Ultimately, Smith pleaded guilty to driving under suspension and the other charges were dismissed.

### III.  Summary Judgment Standard

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions]

(5:09-CV-02099)

must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, the adverse party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Rule 56 requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990). Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony." *Reid v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (*citing Biechell v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)); *but see Baer v. Chase*, 392 F.3d 609, 623-26 (3d Cir. 2004) (noting that a so-called "sham" affidavit need not be disregarded if there is "independent evidence in the record to bolster [the] otherwise questionable affidavit"). Further, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (*quoting Anderson v. Liberty Lobby*, 477 U.S. at 252).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are genuine factual issues that properly

-5-

(5:09-CV-02099)

can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. at 250. Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52; *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment").

### IV. **Analysis**

As mentioned above, the only remaining defendant is the City of Akron. The outstanding claims against the City are as follows:

    Count Two:    Violation of 42 U.S.C. § 1983 by the City of Akron against Rashoun Smith.

    Count Five:    Municipal Liability pursuant to 42 U.S.C. § 1983 and *respondeat superior*.

    Count Six:    Negligence

    Count Seven:    Negligent Training and Supervision

    Count Eight:    Intentional Infliction of Emotional Distress

    Count Nine:    Negligent Infliction of Emotional Distress

    Count Ten:    Punitive Damages

For the following reasons and because there are no genuine issues of material fact, the City of Akron is entitled to summary judgment as a matter of law on all remaining Counts against it.

(5:09-CV-02099)

### A. <u>Municipal Liability Under 42 U.S.C. § 1983: Counts Two and Five</u>

Smith asserts a § 1983 claim of municipal liability based on alleged City of Akron policies and practices of failing to adequately train and supervise its officers. A municipality cannot be found liable for deprivation of a constitutional right unless a plaintiff can establish that an officially executed policy or the toleration of a custom within the municipality deprived the plaintiff of that right. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Municipal liability for unconstitutional acts of employees cannot be established on the basis of *respondeat superior*, but rather requires proof that the municipality's policy or custom caused the harm. *Id.* at 694. Thus, in order to hold a municipality liable, the plaintiff must establish that: (1) a constitutional violation occurred; and (2) the municipality "is responsible for that violation." *Graham v. County of Washtenaw*, 358 F.3d 377, 382 (6th Cir.2004) (*quoting Doe v. Claiborne County.*, 103 F.3d 495, 505-06 (6th Cir.1996)).

"A systematic failure to train police officers adequately is a custom or policy which can lead to municipal liability." *Miller v. Sanilac County*, 606 F.3d 240, 255 (6th Cir. 2010) (internal citations omitted). "The inadequacy of police training only serves as a basis for § 1983 liability 'where the failure to train amounts to *deliberate indifference* to the rights of persons with whom the police come into contact.'" *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008) (*quoting City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (emphasis in original)). Such conditions arise when "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation

-7-

(5:09-CV-02099)

of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. at 390.

"To succeed on a failure to train or supervise claim, a plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir.2006) (*citing Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir.1992)).  In order to prevail on a *Monell* claim, "[t]here must be a 'direct causal link' between the policy (or lack of policy) and the alleged constitutional violation such that the [municipality]'s 'deliberate conduct' can be deemed the 'moving force' behind the violation." *Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (*quoting Waters v. City of Morristown*, 242 F.3d 353, 361 (6th Cir. 2001)).

The City first contends that Smith's municipal liability claim fails because he cannot demonstrate *Monell*'s first requirement — a constitutional violation occurred.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).  Due to the existence of genuine issues of material fact as to the underlying constitutional violation, this argument lacks merit.  Notwithstanding, and assuming *arguendo* that a constitutional deprivation occurred for the purposes of this analysis only and without deciding the merits, the claim against the City of Akron still fails under the second prong of *Monell* — the municipality is responsible for the violation.

The City contends that Smith cannot demonstrate the requisite municipal responsibility under the second prong of *Monell*.  Smith argues that the City had a custom, policy or practice of

-8-

(5:09-CV-02099)

a failure to train its police officers. Specifically, Smith suggests the City failed to train its police officers because Officers Ross and Miles improperly used a taser on Smith, numerous complaints have been made against Ross and Miles and that Ross and Miles failed to call for backup as required. Smith's arguments miss the mark.

Upon review, the Court finds that Smith has not established that the City's training or supervision of its officers was inadequate, much less that an inadequacy was the result of the City's deliberate indifference or that an inadequacy was closely related to or actually caused Smith's injury. All of Smith's arguments reflect alleged errors made only by Officers Ross and Miles, not by any of the City's other officers. Smith points out that the City does indeed have a training manual for the proper use of tasers. Smith goes to the extent of stating, "the City of Akron trained its police offers as to the proper procedure for use of the taser . . . ."[1] Essentially, Smith argues that the City trained its officers on the proper procedures of when and how to use a taser but since Ross and Miles clearly did not properly use the taser on Smith, then the City's training program and policies on the use of tasers must be inadequate. This argument's cognitive leap from two officers allegedly misusing a taser to rendering an entire police department's training program a systematic failure, without more, is too far a jump for the Court to make.

"That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton v. Harris*, 489 U.S. at 390-91. Smith does not present evidence that the City's other officers used tasers improperly or describe any possible

---

[1] ECF No. 43 at 11.

(5:09-CV-02099)

shortcomings of the City's training program to establish a failed policy.  Nor does he demonstrate that the City was on notice that its taser training was inadequate based upon prior instances of unconstitutional conduct.  Moreover, the complaints against Officer Miles that Smith highlights occurred *after* the incident at issue occurred.  Certainly, these "after-the-fact" complaints could not put the City on notice of an inadequate training program or policy prior to the occurrence of the events at issue.

As a whole, Smith's arguments at best establish that Ross and Miles may be unsatisfactorily trained, but his arguments do not rise to the level of proof required by *Monell* and its progeny to show that the City's training or supervision of its officers was inadequate, much less that the inadequacy was the result of the City's deliberate indifference and that the inadequacy was closely related to or actually caused Smith's injury.  Therefore, Smith's *Monell* claim fails because he cannot establish municipal liability under the theory that the City of Akron's policies and practices fail to adequately train and supervise its officers.

Accordingly, the City's motion for summary judgment as to Counts Two and Five is granted.

### B.  State Common Law Claims: Counts Six, Seven, Eight, Nine and Ten

In addition to the federal claims brought under § 1983, Smith also asserts state common law claims of negligence, negligent training and supervision, intentional infliction of emotional distress, negligent infliction of emotional distress and a claim for punitive damages against the City.

(5:09-CV-02099)

The City argues that Ohio Revised Code § 2744.02(A)(1) cloaks it with immunity from such state law torts. That section provides that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." The provision or nonprovision of police and emergency services qualifies as a "governmental function." Ohio Rev. Code § 2744.01(C)(2). The City is a political subdivision and Smith's asserted injuries all stem from the performance of governmental functions. The specific exceptions described in § 2744.02(B) circumscribe § 2744.02(A)'s broad grant of immunity, but Smith does not argue that any of them apply here.

Additionally, the City argues that Smith is not entitled to punitive damages. The Sixth Circuit in *Kish v. City of Akron* "look[ed] to the following tenet of Ohio law: 'In the absence of a statute specifically authorizing such recovery, punitive damages can not be assessed against a municipal corporation.'" *Kish v. City of Akron*, 200 Fed.Appx. 390, 393 (6th Cir. 2006) (*quoting Spires v. City of Lancaster*, 28 Ohio St.3d 76, 502 N.E.2d 614, 615 (1986) (syllabus) (internal citation omitted). Smith has not argued any such statute nor has he disagreed with the City's assertions regarding the availability of punitive damages. Thus, punitive damages are not available to Smith.

Accordingly, the City is entitled to immunity from Smith's state law claims and is therefore granted summary judgment for Counts Six, Seven, Eight, Nine and Ten.

### V. Conclusion

(5:09-CV-02099)

       For the aforementioned reasons, the City of Akron's motion for summary judgment is GRANTED.

       IT IS SO ORDERED.

|  October 6, 2010 | *s/ David D. Dowd, Jr.* |
|---|---|
| Date | David D. Dowd, Jr.<br>U.S. District Judge |